## ARONBERG et al. v. FEDERAL TRADE COMMISSION.

### No. 7834.

Circuit Court of Appeals, Seventh Circuit.

Dec. 28, 1942.

Rehearing Denied Jan. 29, 1943.

166

David Silbert, of Chicago, Ill. (Jacobson, Merrick, Nierman & Silbert, of Chicago, Ill., on the brief), for petitioner.

William T. Kelley, Federal Trade Commission, Joseph J. Smith, Jr., Federal Trade Commission, R. P. Bellinger, James W. Nichol, and J. B. Truly, Sp. Attys., for Federal Trade Commission, all of Washington, D. C., for respondent.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioner seeks to vacate an order of the Federal Trade Commission directing him to cease and desist from certain alleged unfair and deceptive trade practices in violation of the pertinent Act, 15 U.S.C.A. §§ 52, 55.

The complaint averred that petitioner, in selling, in interstate commerce, medicinal preparations for relief of delayed menstruation, known as "Triple-X Compound," "Reliable Perio Compound," "Perio Pills," and "Perio Relief Compound," falsely advertised that the compounds are effective, harmless remedies for such delay, accomplishing immediate effective results painlessly; that, in fact, the products contain dangerous drugs in quantities sufficient to endanger health and that petitioner's advertisements were false in that they failed to reveal these dangerous potentialities.

The Commission found the averments sustained by the proof and directed petitioner to cease and desist from advertising his preparations so as to state, directly or by implication, that they are an effective remedy or that they are harmless or safe to use, or so as to fail to reveal that their use may produce gastrointestinal disturbances, severe toxic and circulatory abnormalities, and, in pregnancy, violent poisonous effects.

Petitioner contends that his advertisements do not assert that his product is a remedy but merely that it provides relief. He insists that there is no evidence to support the finding to the contrary or the further finding that use of his preparations is dangerous, if the directions accompanying them be followed.

The following is typical of the advertising:

"Delay Never Worries Me

"Don't be alarmed over delayed, overdue, unnaturally suppressed periods. A new discovery—Triple-X Relief Compound is fastest acting, safest aid to married women. Acts without discomfort or inconvenience even in obstinate cases."

"Many Women Testify to Its Relief for Delay Why Don't You Do What So Many Other Women Do?

· "Thousands of women are needlessly miserable and unhappy because of abnormally delayed periods. If you are one of these troubled, discouraged women, lose no time in trying Perio Relief Compound. Scores of women in every part of the country, in large cities and small towns, highly praise Perio Relief Compound for its reputed effectiveness and the blessed relief it gives them.

"Time Tested

"Perio Relief Compound is a time tested preparation which can be taken at home without anyone knowing and in most cases with little, if any discomfort; and most often without interfering with daily activities. Thousands of modern-minded women have used Perio Relief Compound; a large number of them having heard about it through friends who have been helped and are therefore grateful. Many who said their periods were long overdue, severely obstinate, abnormally suppressed, or painfully scanty claim Perio Relief Compound among the most pleasant and most satisfactory aids they ever used."

"A Modern Aid for Married Women

"Much of the constant charm and loveliness of womanhood depends upon a regular occurrence of her periodic function. When a lapse of this vital function occurs due to such causes as a cold, nervous strain, exposure or many other abnormal reasons, her comfort is often disturbed by pain * * * her disposition is apt to turn irritable. What is more, the happiness of those dear to her may be affected.

"Perhaps you have been faced with this situation.

"For countless women such unnatural interruption is often needless. To them a simple preparation is offered, which in many cases of abnormally suppressed, overdue, scant and painful periods has helped start the function, thus bringing gratifying relief. It is called Perio Relief Compound and may be taken at home without, in most instances, interfering with daily activities.

"Perio Relief Compound is to quickly and harmlessly aid most abnormally suppressed functions, in cases where no organic disorder is present.

"It is made expressly for this purpose, and is offered to you on a money back guarantee. Should it not give absolute satisfaction with the very first order, your cost is promptly refunded."

 To an educated analytical reader, these and similar statements may not seem to claim anything more than to relieve delayed menstruation. But the buying public does not ordinarily carefully study or weigh each word in an advertisement. The ultimate impression upon the mind of the reader arises from the sum total of not only what is said but also of all that is reasonably implied. As we said in D. D. D. Corporation v. Federal Trade Commission, 7 Cir., 125 F.2d 679, 681: "Petitioner argues this phrase ['for quick relief from itching of eczema, etc.'] can only refer to itching, and that there is no implication the product is a remedy or relief for such diseases. We think there is merit in petitioner's contention that this and similar statements, when carefully scrutinized, may be thus construed. The weakness of this position, however, lies in the fact that such representations are made to the public, who, we assume, are not, as a whole, experts in grammatical construction. Their education in parsing a sentence has either been neglected or forgotten. We agree with the Commission that this statement is deceptive and calculated to be deceiving to a substantial portion of the public." The law is not made for experts but to protect the public,—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze but too often are governed by appearances and general impressions. Florence Mfg. Co. v. Dowd, 2 Cir., 178 F. 73. Advertisements must be considered in their entirety, and as they would be read by those to whom they appeal. Ford Motor Co. v. Federal Trade Commission, 6 Cir., 120 F. 2d 175, 182. If the Commission, having discretion to deal with these matters, thinks it best to insist upon a form of advertising clear enough so that, in the words of the prophet Isaiah, "wayfaring men, though fools, shall not err therein," it is not for the courts to revise its judgment. Advertisements are intended not "to be carefully dissected with a dictionary at hand, but rather to produce an impression upon" prospective purchasers. Newton Tea & Spice Co. v. United States, 6 Cir., 1923, 288 F. 475, 479.

■ The public is not learned in medical terminology. Very probably, to it, the distinction which petitioner suggests between "functional" and "organic" causes is, we think, without significance inasmuch as the terms are employed with reference to the functions of the human organs. The term "relief" is not of definite connotation or entirely free from ambiguity; in a common sense, it connotes permanent removal of organic or functional disturbance, as distinguished from alleviation of discomfort. Stedman's Medical Dictionary (14th Rev.Ed.1939), Dorland, The American Illustrated Medical Dictionary (18th Ed.1938), Webster's New International Dictionary (2nd Ed., Unabridged, 1937), The Oxford English Dictionary (1933), Funk & Wagnall's New Standard Dictionary (1930), Century Dictionary (Rev.Ed.1914). Petitioner's testimonial letters specifically refer to his Perio preparation as a "remedy"; he states that his drugs are "for" delayed menstruation, that he "highly recommends" them and that "full treatment" will be sent for a stipulated sum; that because his "medicine" is available there is no necessity for "discouragement, concern or alarm" over "delayed, overdue, unnaturally suppressed periods," or "abnormal" or "unnatural functional delay"; that his preparations "work" without pain or inconvenience; that they "end delay," possess "high quality and effectiveness," and are "absolutely guaranteed."

■ Use of the words "for drunkenness" has been held equivalent to saying that a drug is a " 'cure, mitigation, treatment, or prevention' of drunkenness." United States v. 11¼ Dozen Packages, D.C.W.D.N.Y.1941, 40 F.Supp. 208, 210. A representation that a medicine is "for" or a "treatment for" a disorder is equivalent to labeling it "as a cure or remedy." Hall v. United States, 5 Cir., 267 F. 795, 798. Labeling of mineral water as "Recommended in the treatment" of diseases can "only mean that the use of the water in the treatment of the diseases named would effect a cure or alleviation * * *." Bradley v. United States, 5 Cir., 264 F. 79, 81.

Petitioner employed such statements as "Don't be alarmed over delayed, overdue, unnaturally suppressed periods"; "Thousands of women are needlessly miserable and unhappy because of abnormally delayed periods"; "For countless women such unnatural interruption is often needless." Any such unnatural delay undoubtedly causes some concern to any woman, and representations that the preparations will remove such alarm quite reasonably, it seems to us, imply that they will effect a remedy. The cause of the patient's concern is not so much in the discomfort suffered as in the reason for the unnatural abnormal delay. We think, therefore, that the edict that there is no need for the purchaser to worry reasonably justifies an inference that if she buys and uses the preparations, she will not only experience some relief from inconvenience and discomfort but also remove the cause. The implication is aided by the reference to the preparation as an "aid" to abnormally suppressed functions. The phraseology is such that we believe the Commission justified in finding that petitioner reasonably implies that if his preparations do not work a complete cure they will at least substantially aid in removal of the cause of failure of normal functions.

This is confirmed by testimonials received by petitioner from users demonstrating that the writers actually believed petitioner's preparations to be remedies. The following are examples: "I received wonderful results and got along after I tried many other remedies which failed." "Please send me without delay a box of your Perio Pills. The others worked fine, and I am able to say they are the only remedy that helped me." "I have received help from your medicine. I just took one box of Perios. It was a delay of nine weeks. Sure was glad to get in touch with your wonderful help." It is apparent that petitioner's preparations were believed in the minds of the authors of these letters to be a cure, not merely means for relief.

Petitioner insists, however, that under our language in D. D. D. Corporation v. Federal Trade Commission, 7 Cir., 125 F.2d 679, 682, "relief" connotes only alleviation. In that case, the court stated that the words "relief from itching" carried no implication that the product furnishing such relief was a permanent cure for the disease. There, however, itching was merely a symptom of eczema, scales, rash or other skin diseases and the preparation did offer temporary relief. Here the tone of petitioner's statements was such as to imply that his preparations would relieve the patient of functional disorder. They did not emphasize that petitioner's preparations would relieve

headaches, backaches, sluggishness, and other results of delayed menstruation, but they were such as to induce the belief that the cause would be remedied. Furthermore in the cited case, the court carefully distinguished a statement that D. D. D. preparation would offer "relief from itching" from one "for quick relief from the itching of eczema, blotches, pimples, athlete's foot, scales, rashes, etc.," holding that the latter implied remedial qualities.

Petitioner further insists that there is no basis for the finding that his preparations are dangerous or that he failed to give adequate warning of their probable effects. The advertisements contain no directions for use or warning that the preparations may be dangerous. It is only upon order and receipt of the preparations,—usually by mail,—that directions are received.

The Act forbids dissemination of any misleading advertisement which fails to reveal facts material in view of the consequences of the use of a commodity. 15 U.S.C.A. §§ 52, 55.

Petitioner made such claims as the following:

"Perio Relief Compound contains no habit-forming drugs, but is made almost solely of pure vegetable ingredients such as may be used by many physicians in their practice."

"Perio Relief Compound is made to quickly and harmlessly aid most abnormally suppressed functions, in cases where no organic disorder is present."

By these assertions, clearly, it was meant to suggest that no harm would or could result from the use of the preparations.

Prior to the investigation, the labels suggested four capsules each day, one before each meal and one upon retiring. Subsequently, the directions were altered to direct that the medicine should not be continued for more than ten days, allowing one week to elapse before resuming; to warn users not to use the pills during pregnancy, and to cease use temporarily if they caused excessive bowel action.

Of the constituent elements of petitioner's preparations, aloes, extract of cotton root, black hellebore, and oil savin are strong cathartics and gastro-intestinal irritants; ergotin causes constriction of the blood vessels and contraction of the involuntary muscles, including the muscles of the uterus, and in pregnant women, aloes, ergotin, extract of cotton root, and quinine sulphate supply abortifacient impulses.

Physicians, experts in gynecology and obstetrics, testified as to the qualities and effects of the preparations. They generally agreed that taking them in small quantities or for a short period would probably not cause a serious result, although the patient might experience discomfort. However, their evidence is that if the medicines are taken for a period of from four to ten days as prescribed, danger of a severe abnormal circulatory condition due to constriction of blood vessels will arise, resulting in severe gastro-intestinal disturbances and violent poisonous effects upon the human organic system. In some instances, where women are particularly susceptible to or are suffering from certain diseases, such results will appear more quickly and will be fraught with greater danger. In pregnancy, harmful results will be more probable and, when occurring, more pronounced. Use of such preparations may cause abortion. An overdose of from six to twelve pills in a day may produce dangerous results within a day or two, while taking the pills as prescribed for a period of from two to three weeks is likely not only to produce the mentioned dangerous results, but also to lead to a gangrenous condition of serious nature. The consensus of the expert testimony was that petitioner's preparations are not competent, safe, or reliable as a relief for delayed menstruation because of the heavy dosage of drugs contained in each capsule. There was also substantial agreement among all the medical witnesses that in sound medical practice, doctors will prescribe emmenegogues only in exceptional cases, and then only after careful examination of the patient and under strict instruction and supervision.

It is thus apparent that the Commission was justified in believing that where preparations such as petitioner's are sold indiscriminately to the public and taken without medical supervision, prescription or adequate warning as to probable effect, many users, because of ignorance, alarm or desire for quick relief, are likely to take excessive or too frequent doses, thus increasing the dangerous potentialities. Yet there is nothing to warn users against such contingencies. In fact, statements that the preparations are "harmless," "non-habit forming," "pure vegetable in-

gredients" quite reasonably lead users to believe that not only are the capsules absolutely safe to use as suggested but safe to use in excess.

True, the Commission's evidence was zealously controverted by petitioner. But the triers of the facts were in a position to weigh the testimony and the credibility of the witnesses. In view of substantial evidence to support the findings and our lack of authority to pass upon credibility or weight of evidence, they must be upheld. Federal Trade Commission Act, 15 U.S.C.A. § 45(c); Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 117, 58 S.Ct. 113, 82 L.Ed. 141; Dr. W. B. Caldwell, Inc., v. Federal Trade Commission, 7 Cir., 111 F.2d 889, 891.

The order is affirmed.