FEDERAL TRADE COMMISSION v. NATIONAL HEALTH AIDS, Inc. et al.

Civ. A. No. 6077.

United States District Court
D. Maryland, Civil Division.

Nov. 12, 1952.

Daniel J. Murphy and Joseph Callaway, Washington, D. C., Bernard J. Flynn, U. S. Atty., Baltimore, Md., for plaintiff.

Robert E. Freer and Nelle L. Ingels, Washington, D. C., Bernard H. Herzfeld, Baltimore, Md., for defendants.

CHESNUT, District Judge.

In this case the Federal Trade Commission has filed a motion for a preliminary injunction against the defendants under the authority of section 13 of the Federal Trade Commission Act, 15 U.S.C.A. § 53(a), of which reads as follows:

"(a) Whenever the Commission has reason to believe—

"(1) that any person, partnership, or corporation is engaged in, or is about to engage in, the dissemination or the causing of the dissemination of any advertisement in violation of section 52 of this title, and

"(2) that the enjoining thereof *pending the issuance of a complaint by the Commission under section 45 of this title, and until such complaint is dismissed by the Commission or set aside by the court on review,* or the order of the Commission to cease and desist made thereon has become final within the meaning of section 45 of this title, would be to the interest of the public, the Commission by any of its attorneys, designated by it for such purpose may bring suit in a district court of the United States or in the United States court of any Territory, to enjoin the dissemination or the causing of the dissemination of such advertisement. *Upon proper showing* a temporary injunction or restraining order shall be granted without bond. Any such suit shall be brought in the district in which such person, partnership, or corporation resides or transacts business."

I have italicized the phrases of the statute which are particularly in question in this

case. Upon *proper showing* subsection (b) is not here in point.

Section 52 (referred to in section 53) reads as follows:

"52. Dissemination of false advertisements—Unlawfulness

"(a) It shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—

"(1) By United States mails, or in commerce by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, or cosmetics; or

"(2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in commerce of food, drugs, devices, or cosmetics.

"(b) The dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in commerce within the meaning of section 45 of this title. Sept. 26, 1914. c. 311, § 12, as added Mar. 21, 1938, c. 49, § 4, 52 Stat. 114."

The motion is based on the ground that the defendants are engaged in the sale and distribution in interstate commerce of a product designated as "N.H.A.Complex" and in connection therewith are causing the dissemination of false advertisements. The motion alleges that the advertisements are false in that they represent directly or by implication that N.H.A.Complex "will make one well and keep one well", and that it is a competent and effective treatment for various diseases including arthritis, rheumatism, neuralgia, sciatica, lumbago, gout, coronary thrombosis, brittle bones, bad teeth, malfunctioning glands, infected tonsils, infected appendix, gall stones, neuritis, underweight, constipation, indigestion, lack of energy, lack of vitality, lack of ambition and inability to sleep; and that all persons in this country normally consume a diet deficient in vitamins, minerals and proteins and that it is necessary for everyone to use a dietary supplement such as N.H.A.Complex to obtain the vitamins and proteins necessary to good health. It is further alleged that the Commission has reason to believe that the injunction would be in the interest of the public and that further dissemination of false advertisements will cause irreparable injury to the public.

The motion for the injunction was filed on September 18, 1952 contemporaneously with the filing of a formal complaint by the Federal Trade Commission in this court against the defendants which allege that under sections 5 and 12 of the Federal Trade Commission Act, 52 Stat. 111, 15 U.S.C.A. §§ 45, 52, the Commission had issued its complaint against the defendants charging that they were engaged in the dissemination of false advertisements in violation of section 12 of the Act. In the complaint filed in this court it is alleged that the composition of N.H.A.Complex consists principally of certain enumerated vitamins and minerals with a certain amount of iodine, calcium and phosphorous. The detailed quantities, taken from the labels on the packages, are stated and the directions for dosage are "adults take ¼ oz. daily (which is approximately 2 level teaspoonsful or 4 half teaspoonsful) followed by water, or take as directed by your physician." It is further alleged that the defendants have caused and are continuing to cause various false advertisements with respect to said drug preparation to be disseminated by radio and television broadcasts from broadcasting stations located in different states of the United States that have sufficient power to transmit said advertisements across state lines; and that such advertising is national in its scope. It is further alleged in the complaint that the advertisements are false in that they represent that N.H.A.Complex, used as directed, "will make one well and keep one well" and will be effective in the treatment of various diseases and otherwise as heretofore mentioned with respect to the motion for a preliminary injunction. The complaint asks for the preliminary injunction. A copy of the complaint by the Commission in its own proceedings (Docket No. 5997) is attached as an exhibit to the complaint filed here for

a preliminary injunction. The administrative complaint was filed by the Commission May 29, 1952, and the complaint in this court was filed September 18, 1952.

On the separately filed motion for a preliminary injunction issued by this court, an order was signed for the defendants to show cause why said preliminary injunction should not issue as prayed within 3 days after service on them of a copy of the complaint and the motion for a preliminary injunction. On September 29, 1952, the defendant, National Health Aids of Baltimore, Inc. (formerly National Health Aids, Inc.), filed an answer to the motion and on the same day filed an answer to the complaint in this court. Some affidavits were also filed in support of the defendant's answer. The individual defendant, Charles Kasher, has not yet been served in the case and has filed no answer.

With the complaint in this court there has been filed a volume of exhibits and affidavits which, considered as a whole, tend strongly to support the averments of the complaint as to the nature and character and effect of the advertisements as false and misleading. The answer of the defendant, National Health Aids, Inc., denied that the advertisements are false and misleading and also denied that the preparation known as N.H.A.Complex is a drug. With the answer of the defendant there are also filed four affidavits of Baltimore lawyers which in their similar substance and effect state that the impressions made upon them respectively after reading the advertisements is contrary to the contention of the Federal Trade Commission. On the other hand, the more numerous and detailed and more explicit affidavits in support of the complaint are of medical men of repute and experience and of persons trained in the psychology and effect of advertisements on the public mind generally. With the complaint are filed four separate advertisements which are broadcast in practically national scope by radio and television. They are in the form of so-called lectures under the catchy titles of "Let's Live a Little"; "Stop Fooling Yourself" and "Who Ya Laffin' At"; "Animal, Vegetable, Mineral"; all by Charles D. Kasher who is the president of the corporation defendant, National Health Aids, Inc., and the defendant in this case who has not been served and has not answered. The radio and television broadcasts are of about thirty minutes duration. They are said to be novel in their kind and in general entertaining, in the way they are expressed. Apart from the affidavits filed with the Commission's complaint I think it quite important that the advertisements themselves be considered as a whole; and I have carefully read at least two of the four so-called lectures to get a comprehensive view of their import.

Counsel for the respective parties have been heard in oral argument and have filed briefs which I have carefully considered.

The first and possibly the most stressed contention of the defendant is that the wording of section 53, 15 U.S.C.A., does not authorize the issuance of a preliminary injunction in this case because the application therefor is made *after* and not *before* the filing by the Commission of its complaint against the defendant in the Commission procedure. The contention is that the language of section 53(a) (2) reading "pending the issuance of a complaint by the Commission under section 45 of this title, and until such complaint is dismissed by the Commission or set aside by the court on review * * *" by its correct interpretation permits the issuance of such an injunction only *before* the Commission files its own complaint in its own procedure. On first reading the section the contention seems at least plausible because of the ordinary meaning of the word "pending"; but while the word is often used in the sense of "until" it may also at times be used in the sense of "during". If the word "pending" is in its context given the meaning of "during" the whole phrase "pending the issuance of a complaint by the Commission under section 45 of this title, and until such complaint is dismissed by the Commission or set aside by the court on review" is not inapt to express authority for the issuance of the injunction either before or after the Commission's own complaint has been filed. Moreover, and possibly more importantly, as the matter is expressed by counsel for the Commission, the conclusion of the phrase "and

344

until such complaint is dismissed" etc., means that the injunction is permitted both before and after the filing by the Commission's complaint in its own procedure, and during or pending the final termination of that Commission procedure. And there is to be found some support for this view in the legislative history of the section called to my attention by counsel for the Commission. Section 13(a) of the Federal Trade Commission Act was added to the Act, originally passed in 1914, by the so-called Wheeler-Lea Amendment of March 21, 1938, c. 49, § 4, 52 Stat. 114. In report No. 1613, 75th Cong. 1st Sess., Mr. Lea, a member of the House Committee on Interstate and Foreign Commerce, submitted a report which was finally enacted. In this report the general purposes of the proposed legislation were described as being to broaden the powers of the Federal Trade Commission over unfair methods of competition and to provide the Commission with more effective control over false advertisements of foods, drugs, devices and cosmetics. In the body of the report on page 6 there appears the statement, as quoted by counsel for the Commission in their brief in this case, "in cases where the accused persists in the dissemination of a misleading advertisement after complaint, the Commission is given a prompt method of procedure to prevent the continuation of the offense by a temporary injunction issued by the court under section 13." And in their brief counsel further state that in the Congressional Record of January 12, 1936, p. 547, the managers of the bill said:

"In addition to that we have provided that the Commission may resort to the use of injunction pending final determination of its procedure in order to stop the dissemination of false advertisements where injuries to the public are involved if in the meantime the accused persists in continuing his false advertisements notwithstanding the Federal Trade Commission has taken up the case. When it comes to deciding the question whether or not the Commission should proceed, we give it the same discretion it has now to proceed in those cases where 'it should be

in the public interest' to give this protection by a temporary injunction."

■■■ Counsel for the Commission also relevantly point out that the Wheeler-Lea amendment was in the nature of remedial legislation and accordingly should be liberally construed; and also that a statute should be construed in the light of the purpose it seeks to achieve and the evil it seeks to remedy. Adler Hotel Co. v. Northern Hotel Co., 7 Cir., 175 F.2d 619; Binkley Mining Co. v. Wheeler, 8 Cir., 133 F.2d 863, 871.

Counsel for the defendant in contending for a contrary construction of the statute points to what he says was, until very recently indeed, the administrative practice of the Commission with respect to applications for such temporary injunctions. Thus, it is said that the present case is only the second one in which the Federal Trade Commission has ever applied for a temporary injunction *after* the filing of its complaint under the administrative procedure; and that heretofore there have been at least 37 cases in which the Commission has applied for temporary injunction *before* the issuance of the administrative complaint. Counsel have been able to refer me to only two federal appellate decisions dealing with section 53(a) (2). They are both in the 7th Circuit. The first is Federal Trade Commission v. Thomsen-King & Co., Inc., 7 Cir., 109 F.2d 516. In that case one contention of the defendant was that the Commission could not apply for the injunction until *after* the administrative complaint had been filed. As to this, it was said by Circuit Judge Evans at pages 518, 519 of 109 F.2d:

"We are unable to accept defendants' view that the court's jurisdiction under section 53(a) (2) is dependent upon the pendency of proceedings before the Federal Trade Commission. Subsection (2) was written for a purpose which was to prevent the ineffectuality of proceedings before the Commission due to the offender's collecting the spoils incident to improper practices and liquidating or dissolving before the Commission can put a stop to its unfair practices.

"As we construe the expression 'pending the issuance of a complaint' in subsection (2), it means that in the interim between 'the causing of the dissemination of an advertisement' in violation of section 52 of Title 15 U.S.C.A., and the action of the Commission, the latter may institute suit in the District Court to enjoin the dissemination of such advertisement. The effectiveness of the Commission's action might be defeated unless this authority to invoke the District Court's jurisdiction were given. It is a necessary part of the plan to prevent fraud and fraudulent commerce through fraudulent advertisements."

■ Of course this decision does not of itself establish the construction contended for by the Commission in this case. It does, however, indicate that the statute is remedial in nature and the evident purpose of its enactment was to enable the Commission to take more effective action against false advertisements in the public interest.

The second case is Federal Trade Commission v. Rhodes Pharmacal Co., Inc., 7 Cir., 191 F.2d 744, where on the facts the District Judge refused to grant the injunction but the Court of Appeals reversed. On page 745 of 191 F.2d, second paragraph, it is stated that the complaint for a temporary injunction had been filed *after* the issuance of an administrative complaint by the Commission; but it does not appear that there was any issue before the court on this point in that case. However, it seems not unreasonable to infer that the court would sui sponte have adverted to the question of construction of the statute if in applying it affirmatively there had been judicial doubt as to its application in the situation presented. In this connection it is noted that two of the Judges comprising the court in the second case had also sat in the former case where the question of construction was directly involved. In the second case Circuit Judge Major dissented on the insufficiency of proof to justify the issuance of the injunction. At the end of his dissenting opinion he noted that the hearing before the Commission had been concluded on its merits and awaited the decision by the Commission, and then he added [191 F.2d 748]:

"The complaint in the instant matter was not filed until almost two years after the proceeding was instituted before the Commission. I have serious doubt if the statute contemplates the issuance of an injunction under such circumstances and, in any event, the long delay in making application for an injunction and the fact that a decision by the Commission on the merits could shortly be expected, were matters which the District Court might properly and evidently did take into consideration in the exercise of its discretion to deny the same."

■ While the question of construction is not free from all doubt, I take the view that section 53(a) does authorize the application for a temporary injunction either before or during the pendency of the administrative procedure. I think it was within the intention of Congress that the Commission should have that authority to proceed, and it is not difficult to contemplate possible cases where the public interest would require such procedure either before or after the issuance of the administrative complaint.

■ Another objection urged by defendant's counsel is that in the complaint N.H.A. Complex is described only as a drug; while it is contended that it is a food. I think there is little or no substance in this point. All the affidavits read together satisfy me that the composition can fairly be regarded both as a drug and as a food. Vitmins alone are I think very generally regarded in the nature of a food or a food supplement; but the composition of N.H.A. Complex is not limited to food and minerals but also includes some other substances commonly known as drugs, such as iodine. Apart from this the objection is technical rather than substantial in that the Commission has jurisdiction by the Act over false advertisements both of drugs and of foods. And if the composition should be regarded predominantly as a food, an amendment could readily be made to the complaint.

A further contention of the defendant is worthy of more consideration. It relates to the sufficiency of the proof of what constitutes compliance with the phrase in section 53(a) (2) (second paragraph) reading: "Upon proper showing a temporary injunction or restraining order shall be granted without bond". The statute does not itself indicate what should constitute a proper showing. Counsel for the Commission contends that as the first phrase of the section reads—"Whenever the Commission has reason to *believe*". (Italics supplied.) The proper showing that is required is merely the existence of a reasonable belief on the part of the Commission. On the other hand counsel for the defendant urges that this is entirely too narrow a view to take of the function and authority of courts of equity in dealing with the extraordinary remedy of injunction; and where such an extraordinary remedy may be used "without bond". There is language in the Rhodes case, supra, which seems to give at least some color to the contention of counsel for the Commission. But on reflection it is my opinion that in view of the nature of the subject matter it was hardly the intention of Congress to require a district court in the exercise of the extraordinary remedy of injunction to proceed affirmatively merely on the basis of the reasonable belief of the administrative agency. Very important rights may be affected by the issuance without bond of an injunction. In the instant case it appears without dispute that within about a year after the defendant had begun its interstate sales of N.H.A.Complex by the advertising mentioned, its gross volume of sales had reached $600,000 for the year 1951. Obviously much care should be exercised in the issuance of an injunction without bond which might destroy or very largely depreciate a business of this size and action should be withheld unless the facts fairly require affirmative relief in the public interest. While the injunction is described as a temporary injunction it is apparently agreed by counsel that when once granted it may continue in force for a long period of time, as it is said that it is by no means unusual for an administrative proceeding of this kind before the Commission to be pending for a year or more before final decision; and if the administrative complaint is not dismissed it is possible that further litigation over it may occupy an even longer period of time. A possible two years' delay in the pendency of this injunction if issued may be quite destructive of defendant's business. In this connection, however, of course I have in mind that if the injunction is issued here it would be subject to appeal which can doubtless with ordinary diligence of counsel be heard and decided by the Court of Appeals of this Circuit within a few months. The reasonable belief of the Commission is sufficient to warrant its application for the injunction, but the action of the Court should be based on the general considerations that properly apply in the issuance of preliminary injunctions.

These considerations have made it necessary to carefully examine the so-called showing made by the respective parties by their exhibits and affidavits. After doing so, I reach the conclusion that the temporary injunction should be issued; but I think the provisions of the decree should be carefully drawn and limited to the restraining of those false and misleading features of the advertisements which are clearly established. In discussing my reasons for concluding that a proper showing has been made in this case for the issuance of a preliminary injunction, it is, of course, to be clearly understood that I am dealing only with the matter as now presented to the court and not in any way intending to prejudge what should be the final conclusion of the Commission after the full administrative hearing of both sides.

After reading and personally considering two of the advertisements I think the effect of them is correctly stated in the analysis and conclusions of the affiants, Ray C. Hackman and James Morgan Mosel. In substance their affidavits are that the advertisements fairly are intended to induce the general public belief that the ordinary food diet of the people of the United States is deficient in minerals and vitamins; that it is necessary to supplement the diet in practically all cases by a composition of vitamins and minerals; that N.H.A.Complex is the composition that is necessary to supplement

this food diet and will make one well and keep one well; and that thereby many serious diseases such as arthritis, rheumatism, appendicitis, peritonitis, insomnia, neuralgia, coronary thrombosis, defective teeth, infected tonsils, gall stones, bad bones, etc., can be prevented and cured by N.H.A.Complex as the only perfect dietary supplement. And the affidavits of several competent and experienced physicians, as for instance that of Dr. Leslie Newton Gay of Baltimore, who has specialized as an internist for 33 years, is that N.H.A.Complex when used as directed cannot be depended upon to make one well or keep one well; that it supplements only the minimum adult daily requirements of various vitamins and minerals which will not constitute a competent or effective treatment of diseases or symptoms caused by deficiency of these subjects except in the milder forms of such deficiencies where the continued use of N.H.A.Complex over a long period of time may be beneficial; that N.H.A.Complex however taken is of no value in the treatment of arthritis, rheumatism, sciatica, lumbago, gout, bursitis, coronary thrombosis, high blood pressure, diabetes, bad bones, bad teeth, malfunctioning glands, infected tonsils, infected appendix, gall stones, etc., and that it is not true that all persons in the United States consume a diet that is deficient in vitamins and minerals as many persons consume a well balanced diet and obtain therefrom the daily requirements of vitamins and minerals. Such persons do not need to use a dietary supplement in order to assure their bodies of daily requirements of vitamins and minerals. Dr. Gay also points out that persons suffering from many of the mentioned diseases, conditions and symptoms, for which N.H.A.Complex used as directed is of no value, may suffer irreparable injury if proper diagnosis and treatment are delayed. He particularly mentions in that connection various forms of arthritis which may be cured completely without any permanent damage if proper diagnosis and treatment are received promptly and that especially in the case of coronary thrombosis delay in proper medical care may result in death, and that reliance upon N.H.A. Complex to the extent of neglecting the recognized therapeutic measures for controlling high blood pressure may cause cerebral hemorrhage, resulting in paralysis or death; and that reliance upon N.H.A. Complex and failure to follow prescribed diet and the use of insulin in cases of diabetes may result in coma or even death.

In the lecture entitled "Let's Live a Little" reference is made to the following **physical** ailments or diseases; headache, appendicitis, peritonitis, sleeplessness, arthritis, neuritis or neuralgia, sciatica, lumbago, gout, coronary thrombosis, rheumatism, bad teeth, bad eyes, tonsil infection, constipation, bad bones and lack of vitality. It is true that nowhere in the lectures do I find an express or direct statement that N.H.A. Complex will prevent or cure these specifically mentioned human ailments, but, as I pointed out, in the affidavits referred to reference to them is subtly interwoven into the lecture in such a way that the over-all impression can reasonably be stated to be that one hearing the lecture by radio or on television might well conclude that N.H.A. Complex is a perfect treatment to avoid or cure such ailments.

In this connection I have carefully considered the affidavits of the four Baltimore lawyers filed by the defendant and above referred to. I do not think they adequately meet the case made by the plaintiff's affidavits. Naturally a lawyer in reading the printed lecture would note the failure of express or direct representation. It is doubtless true that a civil action for deceit or a criminal proceeding for obtaining money by false pretenses would not likely be sustained by a court. But the test of falsity in connection with this particular Act is different from that—it is the net impression which the advertisement is likely to make upon the general public. Charles of the Ritz Distributors Corporation v. Federal Trade Commission, 2d Cir., 143 F.2d 676. In determining the question of falsity, the advertisements must be considered in their entirety and as they would be read or understood by those to whom they appeal. Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165.

It should also be remembered that the items here involved are spoken words by

radio and television and the listeners did not have the opportunity to carefully read the lectures as did the lawyers who expressed their opinion by affidavits for the defendant. The nature of these radio talks is of a kind that is more likely to be impressive to a listener in their general effect than where they are closely and quietly read.

In reaching the conclusion that the showing made by the Federal Trade Commission in this case justifies the issuance of a preliminary injunction I have considered another possible aspect of the matter. It may be thought that possibly the lectures are taken too seriously in view of the known tendency of advertisers of various products such as soaps, toilet articles or tobacco, to over-emphasize or exaggerate the good qualities of the particular product and as the American public has become more or less accustomed to this habit that therefore the advertisements or lectures in the instant case should be treated only as a novel entertaining form of the customary "puff" advertising.

It may also be said that N.H.A. Complex is not of itself a harmful drug when taken in quantities no greater than those prescribed on the package. But despite these considerations I think the proper view is that on the showing now made the preliminary injunction should issue because there is potential pecuniary injury to the public in inducing the purchase of a product which, though not intrinsically detrimental, and in some cases possibly is beneficial, is so strongly represented as effective to make one well and keep one well, or in effect to be good "for what ails you". As pointed out in some of the affidavits of the physicians there is the strong possibility of much graver damage to health in inducing people to rely upon a product as a remedy for or prevention of such serious diseases as are, by suggestion at least, woven into the radio lectures. The American public is entitled to be told honestly and fairly the truth so far as it is known to modern science with respect to either foods or drugs.

My conclusion is that the lectures in the instant case go beyond the boundaries of fair and permissible advertisements under the applicable law.

For these reasons I conclude that the showing made warrants the issuance of the preliminary injunction. Counsel are requested to submit the appropriate order or decree in due course.