See, also, 26 F.R.D. 4.

**UNITED STATES of America,**
**Libellant,**

v.

**An Article of Drug consisting of 47 BOTTLES, MORE OR LESS, each containing 30 capsules OF an article labeled in part: "* * * JENASOL RJ FORMULA '60' * * *", Respondent.**

**Civ. A. No. 1042-58.**

United States District Court
D. New Jersey.

Feb. 6, 1962.

**916**

David M. Satz, Jr., U. S. Atty., by Jerome D. Schwitzer, Asst. U. S. Atty., Newark, N. J., and William Goodrich, General Counsel Department of Health, Education & Welfare, Food and Drug Administration, Washington, D. C., by William J. Risteau, Washington, D. C. (Illinois Bar), for the Government.

Bass & Friend, by Milton Bass, New York City, for respondent.

WORTENDYKE, District Judge.

In its opinion, filed December 14, 1961, 200 F.Supp. 1, this Court found that Jenasol capsules, an article of drug, seized under 21 U.S.C.A. § 301 et seq., was misbranded because the claims set forth in its labelling were false and misleading.

On December 18, 1961 respondent obtained an order to show cause why the entry of judgment should not be stayed pending clarification of the Court's findings of fact; clarifying said findings of fact; permitting relabelling of the articles seized; and staying the execution of the decree of condemnation pending an appeal from said decree of condemnation.

The Government now moves to amend the prayers for relief in the libel to include an injunction to prevent the sale of respondent product. Such a form of relief is authorized by 21 U.S.C.A. § 332(a).

The issues presented on return of the order to show cause were orally argued on January 22, 1962, and decision reserved thereon, excepting the application for a stay of entry of judgment, which was denied. (The judgment order when submitted should provide for a stay of destruction of the product under condemnation pending appeal, if taken within time.)

The motion to clarify and expand the Court's opinion was not opposed by the Government, for the apparent reason that the Food and Drug Administration, now seeking an injunction, recognizes the necessity of specific findings with regard to each of the alleged false representations in the labelling in order to render enforceable the injunctive relief which it seeks. Whether or not an injunction could properly issue barring the future sale of Jenasol RJ Formula "60" capsules with each of the representations presently contained in the labelling thereof without more specific findings of fact, was not argued by the parties. However, it was impliedly conceded by the Government than an injunction against the labelling *in toto* might be too broad in scope in view of the findings already made.

■ The Court has found that a decree of condemnation should issue upon "the ample evidence to be found in the testimony of the witnesses for libellant that the drug was not an effective agent in the treatment of headaches, tired eyes, spiritual or physical convulsions" which evidence "was not even contradicted by claimant." It was not incumbent upon the Court to specifically "find" with regard to each and every allegation of misbranding contained in the libel, but in view of the present applications, explicit findings will be made as to the efficacy of Jenasol RJ Formula "60" Capsules as an adequate and effective treatment for:—increasing sexual vitality irritability, insomnia, depression, restoring vitality, alleviating ills of old age

improving memory, stimulating the appetite, normalizing growth of underdeveloped children, extending the span of human life, digestive disturbances, activating glands of the body, physical and mental symptoms of approaching old age; and whether it is a "natural super-tonic" which produces a pleasing state of well being.

The promotional literature accompanying the article of drug in this case holds out the hope to the public that any of the above-mentioned conditions may be effectively remedied by the ingestion of Jenasol RJ Formula "60" Capsules because they contain "miracle" royal jelly. In addition to this ingredient, the capsule is said to contain numerous vitamins in a natural base of wheat germ oil. The evidence adduced establishes that the vitamins contained in the pills may be efficacious in treating some of the disabilities listed.

Dr. Gyorgy, a Government witness, conceded that loss of appetite caused by insufficiency of the Thiamin vitamin might respond to treatment with the product with which we are here concerned. However, such occasions are very rare, and occur only when the condition complained of is a result of a vitamin deficiency. In such cases the effective agent is not the royal jelly but the vitamins contained in the product, and it is clear from reading the literature advertising the capsule that it is not being marketed as a vitamin compound but as a miraculous panacea for the ills described, by reason of its inclusion of the ingredient described in bold print as "ROYAL JELLY". The promotional literature must be read as a whole. United States v. 38 Dozen Bottles * * * Tryptacin, D.C., 114 F.Supp. 461. It is upon the royal jelly that sufferers from the conditions stated are induced by the literature to pin their hopes and fasten their expectations of alleviation and restoration. When read as a whole, the labelling creates and is intended to create the impression upon the sufferer of the stated ills that it is the royal jelly ingredient of the capsule which constitutes the efficacious palliative or therapeutic agent. I find this to be false, and the labelling as a whole consequently misleading. In view of this unmistakable implication of the labelling, the conclusion is inescapable that the labelling is false and misleading in all respects. The specific findings upon which the Court relied in determining royal jelly to be ineffective for the purposes stated in its labelling are set forth in its opinion filed December 14, 1961. The testimony of the witnesses presented by the Government amply supports the libellant's burden of proof.

The remaining question to be resolved is whether libellant's proposed amendment to the libel, to include a prayer for injunctive relief, should be granted. No case has been found on point, i. e., where a plenary trial was held and decision rendered prior to the application to amend the prayer to include additional and novel relief. However, under the general principles of law, there does not appear to be a prohibition against granting such additional relief.

In Zig Zag Spring Co. v. Comfort Spring Corp., 3 Cir. 1953, 200 F.2d 901, the Court upheld District (now Circuit) Judge Smith who, upon completion of the trial allowed the plaintiff to amend its complaint to include "and maliciously" thus entitling it to punitive damages, where the case was tried upon that theory, or at least that element was stressed during the trial, and no surprise pleaded or request for continuance made.

The dispositive question is whether or not the opposing party has been prejudiced. Even in cases where the amendment involves a change of the legal theory or cause of action, such changes have been allowed in the absence of a showing of prejudice.

Thus there appears to be no adequate reason to preclude the Government from obtaining the additional relief it now seeks where the legal theory upon which the case was tried would justify the injunction sought, in addition to a decree of condemnation.

There has been no showing that the illegal conduct complained of has ceased. In fact, upon oral argument, it was conceded that sales of the condemned product are continuing with similar labelling. They are likely to continue unless enjoined.

An injunction may be granted even after the illegal conduct has ceased. See United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303.

The prayers of the libel will be deemed amended to include one for an injunction against further sales of the condemned product with any of the labelling here found to be false and misleading. The injunction so sought is hereby granted.

An order in conformity with the foregoing shall be submitted.