**ALBERTY FOOD PRODUCTS et al. v.
UNITED STATES.**

No. 13062.

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1952.

Eugene M. Elson, Los Angeles, Cal., for appellant.

Walter S. Binns, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., Tobias G. Klinger, Asst. U. S. Atty., all of Los Angeles, Cal. (Arthur A. Dickerman, Attorney, U. S. Food and Drug Administration, Federal Security Agency, Los Angeles, Cal., of counsel), for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

The facts of this case have been stipulated. They appear in detail in the opinion of the District Court. D.C.S.D.Cal. 1951, 98 F.Supp. 23, 25. For our purposes it is sufficient to state that appellants manufacture, pack and distribute certain drugs in interstate commerce. The District Court found the drugs in question to be "misbranded" within the meaning of the Federal Food, Drug and Cosmetic Act in that their labeling failed to bear "adequate directions for use". 21 U.S.C.A. § 352(f)(1). An injunction was issued permanently restraining appellants from introducing into interstate commerce said drugs or any other drug "* * * which is misbranded within the meaning of 21 U.S.C. § 352(f)(1) by reason of the failure of its labeling (1) to enumerate the disease conditions for which said drug is intended and offered to the public, (2) to specify the structures or functions of the body which it is intended to affect and for which it is offered to the public,

and (3) to state the dosage and frequency and duration of administration of such drug for the treatment or prevention of such conditions, or for affecting such structures or functions of the body."

■ The principal contention made on this appeal is that the trial court erred in taking into consideration, in making its finding that the drugs in question were misbranded, certain collateral literature (leaflets and booklets, etc.,) [1] sent by appellant to prospective customers. Appellants obtained customer names in various ways: (a) from retail outlets selling the drugs; (b) from demonstrators hired by appellants to work in retail outlets, and (c) from customer inquiries and mail orders. Newspaper and magazine advertising was also used to promote sales of the drugs. These promotional materials contained claims, representations and suggestions relating to use of the drugs not present on the labels.[2] It is asserted by appellants that a consideration by the trial court of the literature and advertisements is an invasion of a field exclusively under the jurisdiction of the Federal Trade Commission, which has control of false advertising. This contention fails to grasp the scope and purpose of the inquiry with which the Court was concerned. It is not the truth or falsity of the literature and advertising which is challenged; it is merely consideration, as evidence, of claims promulgated by the manufacturer in measuring whether the information communicated by means of the label adequately describes the diseases or conditions for which the drug was intended as well as relevant facts containing dosage.

■ In order for the labeling of a drug to bear "adequate directions for use" within the meaning of 21 U.S.C.A. § 352(f)(1) it must, among other things, state the purposes and conditions for which the drug was intended and sufficient information to enable a layman to intelligently and safely attempt self medication. Alberty Food Products Co. v. United States, 9 Cir. 1950, 185 F.2d 321, 325; Cf. H.Rep. No. 2139, 75th Cong.3d Session 8.

■ While appellants agree with this construction they argue that such fact must be determined from the labeling alone. This contention is without merit. It is not sufficient that the labeling contain a minimum of information and the use of the drug be induced by elaborate collateral representations. To permit the operation of such an escape valve would render the aims and purposes of labeling requirements nugatory. Adequate labeling is best suited to obtain the beneficent purposes contemplated by the Act, viz.: broad protection of the consumer from adulterated or misbranded drugs, etc., and as a practical matter places no burden on those motivated by an honest belief that the claims made for their drug will be accomplished by its use.

In the instant case appellants argue that the drugs involved in this case can properly be classified as "dietary supplements and laxatives," and labeling to that effect is sufficient, because such uses and purposes are of common knowledge. Such an argument has no validity because it is admitted that the drugs have been held out to the public as having beneficial and curative qualities other than their commonly known uses.

The finding of the trial Court that the labels in question do not bear adequate directions for use finds ample support in the law and evidence. See United States v. Various Quantities of Articles of Drug,

---

1. The leaflets and booklets were entitled, "Calcium, The Staff of Life," "Dynamic Digest," "Is There Hope That Graying Hair Can Be Restored? Read What Science Says—Pandora," "Health Mysteries," "Happy Figures by the Cheno Plan," "Reduce! Streamline Your Figure —Follow the 5 Factor Cheno Plan."

2. For example, one of the drugs involved is Alberty's Garlic & Vegetable Oil Perles. The label simply states, "Fresh Garlic Concentrated Eight to One and Combined in Vegetable Oil", "One or 2 Perles Before Meals, a Convenient Way of Including Garlic in the Diet." In the collateral literature "Perles" are mentioned in connection with high blood pressure, various gastro-intestinal disorders, heart failure, hardening of the arteries, gastritis, some forms of dyspepsia, peptic ulcer, exerting an anti-diarrheal effect in gastro-intestinal disease, etc.

etc., D.C.D.C.1949, 83 F.Supp. 882; Colgrove v. United States, 9 Cir. 1949, 176 F.2d 614, certiorari denied 1950, 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561; Alberty Food Products Co. v. United States, 9 Cir. 1950, 185 F.2d 321; United States v. El-O-Pathic Pharmacy, 9 Cir. 1951, 192 F.2d 62, 77.

Judgment affirmed.