UNITED STATES of America, Plaintiff,

v.

ARTICLES OF DEVICE [ACUFLEX; PRO–MED] consisting of the following: One device, more or less, labeled in part: (front panel) "Acuflex Dual Model CA–110* * *Modulation* * *Rate* * * Voltage* * *Mode* * *Sensitivity* * * Audio* * *Range* * *" (rear panel) "Jaestic Industrial Co., Inc. 29830 Beck Road, Wixom, Michigan 48096 2195–D" including as accompanying labeling, one, more or less, of each of the following items of written, printed, and graphic matter relating to the device: leaflet entitled: "Acuflex Neur-Metron Modules* * *" leaflet entitled: "Acuflex Instruction Guide* * *"· booklet entitled: "What Electric Acupuncture (E.A.P.) is* * *" leaflet entitled: "Technical Data Model CZ–110* * *" One device, more or less, labeled in part: "Pro-Med 1100* * *Frequency* * *Polarity* * *Timer* * *Intensity* * *Sensitivity* * *Volume* * *" including as accompanying labeling one, more or less, of each of the following items of written, printed and graphic matter relating to the device: leaflet entitled: "P.M.D., Inc. is pleased to announce* * *'Pro-Med-1100'* * *" booklet entitled: "Pro-Med 100 Instructions* * *", Defendants,

and

Professional Medical Distributors, Inc., and Constance Haber, D.C., Claimants.

Civ. A. No. 75–1031.

United States District Court, W. D. Pennsylvania.

Jan. 25, 1977.

David B. Atkins, Asst. U. S. Atty., Pittsburgh, Pa., John Patrick Glynn, Consumer Affairs Section, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff.

Carl A. Eck, Pittsburgh, Pa., for claimants.

## OPINION

SNYDER, District Judge.

The Government has brought an *in rem* action under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, to condemn two electric acupuncture devices, Acuflex Dual Model CZ–110 and Pro Med 1100, and their accompanying pamphlets. It contends that the devices are misbranded in violation of 21 U.S.C. § 352(a) and (f)[1] and therefore subject to seizure under 21 U.S.C. § 334(a).[2] After seizure by the U.S. Marshal and commencement of this suit, Dr. Constance Haber (who was in possession of the devices in the Western District of Pennsylvania) and Professional Medical Distributors (distributors of the devices located in Wixom, Michigan) intervened as claimants. The parties have now cross-moved for summary judgment.

Section 352(f) of the Act provides that a device[3] is misbranded "unless its

[1]. 21 U.S.C. § 352 provides:
"A drug or device shall be deemed to be misbranded—
\*   \*   \*   \*   \*   \*
(a) If its labeling is false or misleading in any particular.
\*   \*   \*   \*   \*   \*
(f) Unless its labeling bears (1) adequate directions for use . . . : *Provided,* that where any requirement of clause (1) of this subsection, as applied to any drug or device, is not necessary for the protection of the public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement."

[2]. 21 U.S.C. § 334(a) provides:
"(1) Any article of food, drug, device, or cosmetic that is adulterated or misbranded when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce . . . shall be liable to be proceeded against while in interstate commerce, or any time thereafter, on libel of information and condemned in any district court of the United

States . . . within the jurisdiction of which the article is found . . . ."

[3]. "The term 'device' . . . means instruments, apparatus, and contrivances, including their components, parts, and accessories, intended . . . (1) for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals . . . ." 21 U.S.C. § 321(h). Dr. Haber admitted in deposition that she used the devices in her practice for diagnostic purposes and that they were represented as capable for use for treatment (Haber Deposition at 28, 29, 32, 47, 48, and 52), and the pamphlets accompanying the devices refer to treatment settings. Thus, the devices were clearly intended for use in diagnosis and treatment and are within the scope of the Act.

The other jurisdictional requirements of § 334(a) are also clearly met. The claimants admit that the articles were seized from within the jurisdiction of this district and that they traveled in interstate commerce. An article is "held for sale" if it is used for any purpose other than personal consumption. *United States v. Article of Device . . . Cameron*

labeling bears (1) adequate directions for use . . . .", i. e., directions sufficient that a layman be able to use the device safely for its intended purpose. *Alberty Food Products v. United States*, 194 F.2d 463 (9th Cir. 1952); *United States v. Article of Device . . . Cameron Spitler*, 261 F.Supp. 243, 246 (D.Neb.1966). Thus, the labeling must list the diseases or conditions for which the device should be used, *Alberty Food Products v. United States, supra*; *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62 (9th Cir. 1951); *United States v. Article of Device . . . Cameron Spitler, supra*, as well as the duration and frequency of use prescribed or recommended for those diseases or conditions. *See* 21 C.F.R. 801.109; 38 Fed.Reg. 6419; and *United States v. Article of Drug . . . Instant Alberty Food*, 83 F.Supp. 882 (D.D.C.1949).

■■ The court's review of materials accompanying[4] the devices revealed that the labeling failed to include directions adequate for safe use by the laity. The labels contain no directions on what diseases may be diagnosed by use of these devices and the diagnostic procedure for each disease, much less a specific list of diseases or conditions which may be treated with adequate directions on proper duration, frequency, or location of application sufficient for self-treatment of the specific conditions or dis-

eases.[5] Moreover, the court determines that laymen cannot be expected to possess the skill and knowledge necessary to operate these devices safely;[6] therefore adequate directions cannot be devised for these devices.

■ The mere fact that the devices were intended to be sold only to licensed operators for use in their practices does not in itself exempt the devices from the requirement that the labeling include adequate directions for use by the laity. *United States v. Article of Device . . . Cameron Spitler, supra*; *United States v. Articles of Drug . . . Alberty Instant Food, supra*. *See* 38 Fed.Reg. 6419. However, recognizing the value to medical practice and research of devices which cannot be safely used by laymen and for which adequate directions for use therefore cannot be written, Congress has authorized the promulgation of regulations for exemption from § 352(f)(1). Pursuant to this authority, the FDA has promulgated regulations which exempt a device from the labeling requirement of adequate directions for use if:

> "(a) The device is: . . ..
> (2) [T]o be sold only to or on the prescription or other order of [a licensed] practitioner for use in the course of his professional practice.

---

*Spitler, supra*; *United States v. 10 Cartons . . . Hoxsey Tablets*, 152 F.Supp. 360 (W.D.Pa.1957). Therefore, by their use in diagnosis they were held for sale after interstate shipment.

4. All printed materials accompanying a device constitute part of its labeling. 21 U.S.C. § 321(m). The parties dispute whether Government Exhibit 10, a general article on electric acupuncture which was available on request from Professional Medical Distributors and which makes no specific reference to either device, should be considered part of the labeling. The court need not resolve this dispute since, for reasons identified in notes 5, 8, and 10, *infra*, this determination would not affect the outcome of this proceeding.

5. Exhibit 10 contains no information on use of the devices for non-needle diagnosis for specific conditions, the use for which Dr. Haber held the device, and only vague references to treat-

ment of specific conditions by acupuncture. At page 8, the article states there are specific points for treatment of specific diseases, but it does not indicate what diseases and where the treatment points are, merely referring the reader to "various" unnamed books containing such information. Thus, even if Exhibit 10 were to be included as part of the labeling, it would not add sufficient specificity for § 352(f)(1).

6. Both parties agree that the devices are prescription devices to be used only under the supervision of a licensed practitioner. Claimants contend, however, that Dr. Haber is licensed to use the device and the devices are exempted from the requirement of adequate directions for use by laymen. *See* text, *infra*, at 369–371.

(b) The label of the device, other than surgical instruments, bears: . . ..

(2) The method of its application or use.

(c) Labeling on or within the package from which the device is to be dispensed bears information for use, including indications, effects, routes, methods, and frequency and duration of administration, and any relevant hazards, contraindications, side effects, and precautions under which practitioners licensed by law to administer the device can use the device safely and for the purpose for which it is intended, including all purposes for which it is advertised or represented: *Provided, however,* That such information may be omitted from the dispensing package, if, but only if, the article is a device for which directions, hazards, warnings, and other information are commonly known to practitioners licensed by law to use the device. . . .

(d) Any labeling, as defined in section 201(m) of the act, whether or not within a package from which the device is to be dispensed, distributed by or on behalf of the manufacturer, packer, or distributor of the device, that furnished or purports to furnish information for use of the device contains adequate information for such use, including indications, effects, routes, methods, and frequency and duration of administration and any relevant hazards, contraindications, side effects, and precautions, under which practitioners licensed by law to employ the device can use the device safely and for the purpose for which it is intended, including all purposes for which it is advertised or represented. . . .

21 C.F.R. 801.109.

■ The record reveals that these requirements for exemption have not been met. Part 801.109(b)(2) requires that the label bear the method of application or use of the device. The materials accompanying the device give insufficient directions for a licensed operator to approach diagnosis or treatment safely for any specific disease.[7]

■ The labeling also fails to conform to the Part 801.109(c) requirement that on or within the package must appear information for use including methods, frequency and duration of application or administration, hazards, side effects, precautions, etc.[8] This information is clearly lacking. The regulations provide that only when this information is commonly known to practitioners licensed* to use the device may it be omitted from the packaging. The Government has supplied affidavits of two medical experts who attest that few physicians use acupuncture devices in their practices and they do not commonly know the uses, frequency, pulse and wattage settings, duration of treatment and other such information. Although claimants' experts attest that the directions are adequate that physicians may use the devices safely, they do not assert that all physicians commonly know the directions, uses, hazards, etc., for the devices. Thus, the absence of detailed directions on or within the package is not in accord with Part 801.109(c).

■ Finally, Part 801.109(d) requires that to be exempted from § 352(f)(1), *all* labeling that furnishes information about the device must state indications, side effects, routes, methods, frequency and duration of administration, hazards, precautions and other information needed by the practitioner to employ the device safely for its intended purpose. Even if all pamphlets specifically referring to these devices are considered as one label, they fail to conform to this requirement.[9] They contain only general specifications and directions for the

---

7. Dr. Haber stated in her deposition that she did not use the directions, but relied on her special training in acupuncture. Not all physicians receive such special training, however.

8. Since Exhibit 10 was available on request, it was not a part of or within the package and could not be used to attempt to satisfy Part 801.109(c).

9. The records contain no indication of whether the pamphlets which specifically refer to the devices were distributed as one unit or separately; thus, for summary judgment they will be considered as if they were distributed as one

devices, with no mention of what conditions or diseases may be treated or diagnosed, procedures for specific diseases, frequency of administration, location of administration points, possible side effects, or precautions necessary for safe use.

■ Nor can the claimants rely on compliance with a notice to acupuncture device manufacturers published by the FDA (set forth in Appendix A) to argue that the devices are exempt from § 352(f)(1), since the record reveals that the devices do not comply with the guidelines set forth in that notice. This FDA notice was intended to permit further investigation to determine the usefulness and safety of acupuncture devices, even though the agency would otherwise consider them misbranded because they have not been demonstrated to be safe.

Although one of the pamphlets contains the cautionary statement on the investigational use and institutional review which the FDA published in its notice (Government Exhibit 9, referring to the CZ–110), none of the labels which specifically refer to these devices [10] contain any information on hazards, side effects, precautions or other information needed by researchers in using the devices, and required by the notice.

Consequently, the devices are lacking labeling containing adequate directions for safe use and conform neither to the regulations promulgated for exemption from the § 352(f)(1) requirement of labeling with adequate directions for use, nor to the interim guidelines which the FDA published to aid manufacturers of acupuncture devices. Failing to have labeling with adequate directions for use, the devices are misbranded, and the Government is entitled to summary judgment. The additional contentions of the parties thus need not be addressed.

An appropriate order will be entered.

label since that would be most favorable to the claimants' position. Exhibit 10 could not be used to supplement the adequacy of the label for this purpose, however, since it was obtainable on request and not an integral part of the other pamphlets.

**10.** Even if Exhibit 10 could be considered not only part of the labeling of the devices but also

## APPENDIX A

38 Fed.Reg. 6419, March 8, 1973

### ACUPUNCTURE DEVICES LABELING

Notice to Manufacturers, Packers
and Distributors

The Commissioner of Food and Drugs is aware of the current interest in United States surrounding the use of acupuncture needles, stimulators, and other accessories for medical purposes. Acupuncture paraphernalia are being imported into this country and are also being manufactured domestically for various medical uses, including the treatment and diagnosis of serious diseases, anesthesia, and pain relief. These products are devices and must comply with all applicable provisions of the Federal Food, Drug, and Cosmetic Act.

It is the position of the Food and Drug Administration that the safety and effectiveness of acupuncture devices have not yet been established by adequate scientific studies to support the many and varied uses for which such devices are being promoted, including uses for analgesia and anesthesia. Although various theories have been advanced as to how medical results can be obtained through the use of acupuncture, none has been proved or generally accepted, and there is a body of scientific opinion which questions the safety and effectiveness of acupuncture in many of the uses for which it is now being applied.

Under the Federal Food, Drug, and Cosmetic Act, all devices must be properly labeled to be in compliance with the law. Devices which are not safe for use by the laity, or for which adequate directions cannot be written for safe use by the laity, must be labeled as prescription devices and must be accompanied by labeling which pro-

part of the same label as the other pamphlets describing the devices, the claimants could not successfully contend that their devices should not be considered exempt because they complied with the FDA notice. Exhibit 10's references to treatment for various conditions are, in effect, claims of therapeutic effectiveness not permitted by the notice.

vides the prescribing practitioner with adequate directions for their safe and effective use. Because the safety and effectiveness of acupuncture devices have not yet been adequately demonstrated, and labeling therefore cannot be devised, which would provide adequate directions for safe and effective use, they may not be labeled in accordance with the requirements for prescription devices as stated in 21 CFR 1.106(d). Until evidence is obtained demonstrating that acupuncture is a safe and effective medical technique, acupuncture devices must be limited to investigational or research use.

Current Food and Drug Administration regulations do not contain specific provisions governing the shipment of investigational devices in interstate commerce for clinical research or experimental use. The Commissioner of Food and Drugs is aware of the need for such regulations to provide adequate guidance as to the labeling for experimental devices to be used on human beings. Therefore, the Commissioner intends to publish at a later date proposed regulations which would govern all investigational devices. In the interim, this notice will apply to all acupuncture devices.

In order to establish guidelines under which manufacturers, packers, and distributors can properly label acupuncture devices for investigational use, the Food and Drug Administration met on September 22, 1972, with individuals concerned with the use of acupuncture in the United States. These included representatives of the States of California and New York, the city of New York, the American Society of Anesthesiologists, the National Institutes of Health, the Federation of State Medical Boards, the American Medical Association, medical practitioners, and the Food and Drug Administration Medical Device Advisory Committee. It was the consensus of this group that acupuncture devices should be restricted to investigational use by licensed practitioners and that the labeling for these devices should include this restriction in addition to other information.

Accordingly, the Commissioner of Food and Drugs concludes that until substantial scientific evidence is obtained by valid research studies supporting the safety and therapeutic usefulness of acupuncture devices, the Food and Drug Administration will regard as misbranded any acupuncture device shipped in interstate commerce if the following information does not appear in the labeling:

(a) The name of the device.

(b) The name and place of business of the manufacturer, packer, or distributor.

(c) An accurate statement of the quantity of the contents.

(d) The composition of the device and whether it is sterile, nonsterile, reusable, or disposable.

(e) The dimension or other pertinent physical characteristics of the device.

(f) The following statement: "Caution: Experimental device limited to investigational use by or under the direct supervision of a licensed medical or dental practitioner. This device is to be used only with informed consent under conditions designed to protect the patient as a research subject, where the scientific protocol for investigation has been reviewed and approved by an appropriate institutional review committee, and where conditions for such use are in accordance with State law."

Instructions for the use of the device for the purpose for which it is being investigated and, to the extent such information is known, any human hazards, contraindications, precautions, or side effects associated with its use, should be provided to researchers and investigators. The Food and Drug Administration, however, will regard as misbranded any acupuncture device shipped in interstate commerce if accompanied by claims of diagnostic or therapeutic effectiveness.

Pending promulgation of separate regulations for conducting clinical investigations of investigational devices, researchers and investigators shall assure adequate informed consent and institutional committee review for such investigations, utilizing as a

guideline the standards established for investigational drugs in 21 CFR 130.37 and in Division 10, unit C of form FD–1571, in 21 CFR 130.3(a)(2).

Dated: February 21, 1973.

Sherwin Gardner,
*Deputy Commissioner of Food and Drugs.*

[FR Doc. 73–4540 Filed 3–8–73; 8:45 am]