**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**ARTICLES OF DRUG et al.,**
**Defendants-Appellees.**

No. 77–2704.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1980.

Bruce E. Fein, Edward Lawson, Robert Nicholson, Dept. of Justice, Washington, D. C., for the United States.

Robert G. Pugh, Shreveport La., Alan H. Kaplan, F. Kaid Benfield, Washington, D. C., for Rucker Pharmacal Co.

**666**

Before MORGAN, RONEY and GARZA, Circuit Judges.

RONEY, Circuit Judge:

In this misbranding case under the Food, Drug, and Cosmetic Act,[1] the Government sought to seize large quantities of drugs on the ground they complied with neither a statute requiring a drug's labeling to contain "adequate directions for use," nor an agency-created exemption from that requirement. The district court held that, because these were prescription drugs, the adequate directions for use requirement was satisfied by the inclusion of (1) a cautionary legend on the drugs' labels stating federal law prohibits dispensing without prescription, and (2) sufficient directions to a physician, so the drugs could be prescribed safely and for their intended purposes. On appeal the Government argues the statute requires directions adequate for self-administration by a layman, so that prescription drugs, which by definition can be dispensed safely only under supervision of a physician, must always meet one of the exemptions established by the Food and Drug Adminis-

tration. Agreeing with the Government's interpretation of the statute, we reverse the district court's award of summary judgment for the drug manufacturer, and remand the case for consideration of the issue whether the drugs here met the exemption standards.

### Definitions

Prior to a recitation of the facts, it may be helpful to set forth a number of definitions contained in the statutes and the regulations. Once some definitional common ground has been established, it will be easier to discuss the intricate questions presented by this case, since the language employed by the Act encompasses technical terms of art which do not have their ordinary meaning.

The definition of a "misbranded drug" is found in 21 U.S.C.A. § 352, which sets forth a number of requirements as to a drug's labeling, the violation of any of which will cause the drug to be deemed "misbranded." Of particular relevance here is the requirement found in 21 U.S.C.A. § 352(f)[2] that a drug whose labeling[3] does not include "adequate directions for use" or does not meet a regulatory exemption[4] will be deemed

1. 21 U.S.C.A. §§ 301, 321–321c, 331–37, 341–50, 351–60k, 361–63, 371–79a, 381, 391–92. All references to the Act are to sections in the United States Code.

2. A drug or device shall be deemed to be misbranded—

   **(f) Directions for use and warnings on label**
   Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users: *Provided*, That where any requirement of clause (1) of this subsection, as applied to any drug or device, is not necessary for the protection of the public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement.
   21 U.S.C.A. § 352(f).

3. (k) The term "label" means a display of written, printed, or graphic matter upon the immediate container of any article; and a requirement made by or under authority of

this chapter that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper.

   (m) The term "labeling" means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article.
   21 U.S.C.A. § 321.

4. *See, e. g.,* 21 C.F.R. §§ 201.100, .115 (1980).
   **Subpart D—Exemptions From Adequate Directions for Use**
   **§ 201.100 Prescription drugs for human use.**
   A drug subject to the requirements of section 503(b)(1) of the act shall be exempt from section 502(f)(1) if all the following conditions are met:
   (a) The drug is:
   (1)(i) In the possession of a person (or his agents or employees) regularly and lawfully

Note 4—Continued

engaged in the manufacture, transportation, storage, or wholesale distribution of prescription drugs; or

(ii) In the possession of a retail, hospital, or clinic pharmacy, or a public health agency, regularly and lawfully engaged in dispensing prescription drugs; or

(iii) In the possession of a practitioner licensed by law to administer or prescribe such drugs; and

(2) It is to be dispensed in accordance with section 503(b)

(b) The label of the drug bears:

(1) The statement "Caution: Federal law prohibits dispensing without prescription": and

(2) The recommended or usual dosage, and

(3) The route of administration, if it is not for oral use; and

(4) The quantity or proportion of each active ingredient, as well as the information required by section 502(d) and (e); and

(5) If it is for other than oral use, the names of all inactive ingredients, except that:

(i) Flavorings and perfumes may be designated as such without naming their components.

(ii) Color additives may be designated as coloring without naming specific color components unless the naming of such components is required by a color additive regulation prescribed in Subchapter A of this chapter.

(iii) Trade amounts of harmless substances added solely for individual product identification need not be named. If it is intended for administration by parenteral injection, the quantity or proportion of all inactive ingredients, except that ingredients added to adjust the pH or to make the drug isotonic may be declared by name and a statement of their effect; and if the vehicle is water for injection it need not be named.

(6) An identifying lot or control number from which it is possible to determine the complete manufacturing history of the package of the drug.

(7) A statement directed to the pharmacist specifying the type of container to be used in dispensing the drug product to maintain its identity, strength, quality, and purity. Where there are standards and test procedures for determining that the container meets the requirements for specified types of containers as defined in an official compendium, such terms may be used. For example, "Dispense in tight, light-resistant container as defined in the National Formulary". Where standards and test procedures for determining the types of containers to be used in dispensing the drug product are not included in an official compendium, the specific container or types of containers known to be adequate to maintain the identity, strength, quality, and purity of the drug products shall

be described. For example, "Dispense in containers which (statement of specifications which clearly enable the dispensing pharmacist to select an adequate container)": *Provided, however,* That in the case of containers too small or otherwise unable to accommodate a label with sufficient space to bear all such information, but which are packaged within an outer container from which they are removed for dispensing or use, the information required by paragraph (b)(2), (3), (5), and (7) of this section may be contained in other labeling on or within the package from which it is to be dispensed; the information referred to in paragraph (b)(1) of this section may be placed on such outer container only; and the information required by paragraph (b)(6) of this section may be on the crimp of the dispensing tube. The information required by this paragraph (b)(7) is not required for prescription drug products packaged in unit-dose, unit-of-use, on other packaging format in which the manufacturer's original package is designed and intended to be dispensed to patients without repackaging.

(c)(1) Labeling on or within the package from which the drug is to be dispensed bears adequate information for its use, including indications, effects, dosages, routes, methods, and frequency and duration of administration, and any relevant hazards, contraindications, side effects, and precautions under which practitioners licensed by law to administer the drug can use the drug safely and for the purposes for which it is intended, including all purposes for which it is advertised or represented; and

(2) If the article is subject to section 505, 506, or 507 of the act, the labeling bearing such information is the labeling authorized by the approved new drug application or required as a condition for the certification or the exemption from certification requirements applicable to preparations of insulin or antibiotic drugs.

(d) Any labeling, as defined in section 201(m) of the act, whether or not it is on or within a package from which the drug is to be dispensed, distributed by or on behalf of the manufacturer, packer, or distributor of the drug, that furnishes or purports to furnish information for use or which prescribes, recommends, or suggests a dosage for the use of the drug (other than dose information required by paragraph (b)(2) of this section and § 201.105(b)(2) contains:

(1) Adequate information for such use, including indications, effects, dosages, routes, methods, and frequency and duration of administration and any relevant warnings, hazards, contraindications, side effects, and precautions, under which practitioners licensed by law to administer the drug can use the drug safely and for the purposes for which it

"misbranded." The regulations define "adequate directions for use" as directions which could be understood for a layman to use a drug safely and for its intended purposes.[5] Section 331(a) makes it unlawful to introduce a misbranded drug into interstate

Note 4—Continued

is intended, including all conditions for which it is advertised or represented; and if the article is subject to section 505 or 507 of the act, the parts of the labeling providing such information are the same in language and emphasis as labeling approved or permitted, under the provisions of section 505 or 507, respectively, and any other parts of the labeling are consistent with and not contrary to such approved or permitted labeling; and

(2) The same information concerning the ingredients of the drug as appears on the label and labeling on or within the package from which the drug is to be dispensed.

(3) The information required, and in the format specified, by §§ 201.56 and 201.57.

(e) All labeling described in paragraph (d) of this section bears conspicuously the name and place of business of the manufacturer, packer, or distributor, as required for the label of the drug under § 201.1.

(f) Reminder labeling which calls attention to the name of the drug product but does not include indications or dosage recommendations for use of the drug product is exempted from the provisions of paragraph (d) of this section. This reminder labeling shall contain only the proprietary name of the drug product, if any; the established name of the drug product, if any; the established name of each active ingredient in the drug product; and, optionally, information relating to quantitative ingredient statements, dosage form, quantity of package contents, price, the name and address of the manufacturer, packer, or distributor or other written, printed, or graphic matter containing no representation or suggestion relating to the drug product. If the Commissioner finds that there is evidence of significant incidence of fatalities or serious injury associated with the use of a particular prescription drug, he may withdraw this exemption by so notifying the manufacturer, packer, or distributor of the drug by letter. Reminder labeling, other than price lists and catalogs solely intended to convey price information including, but not limited to, those subject to the requirements of § 200.200 of this chapter, is not permitted for a prescription drug product whose labeling contains a boxed warning relating to a serious hazard associated with the use of the drug product. Reminder labeling which is intended to provide consumers with information concerning the price charged for a prescription for a particular drug product shall meet all of the conditions contained in § 200.200 of this chapter. Reminder labeling, other than that subject to the requirements of § 200.200 of this chapter, is not permitted for a drug for which an announcement has been published pursuant to a review of the labeling claims for the drug by the National Academy of Sciences/National Research Council (NAS/NRC), Drug Efficacy Study Group, and for which no claim has been evaluated as higher than "possibly effective." If the Commissioner finds the circumstances are such that reminder labeling may be misleading to prescribers of drugs subject to NAS/NRC evaluation, such reminder labeling will not be allowed and the manufacturer, packer, or distributor will be notified either in the publication of the conclusions on the effectiveness of the drug or by letter.

**§ 201.115 New drugs or new animal drugs.**

A new drug shall be exempt from section 502(f)(1) of the act:

(a) To the extent to which such exemption is claimed in an approved application with respect to such drug under section 505 or 512 of the act; or

(b) If no application under section 505 of the act is approved with respect to such drug but it complies with section 505(i) or 512 of the act and regulations thereunder.

No exemption shall apply to any other drug which would be a new drug if its labeling bore representations for its intended uses.

5. **§ 201.5 Drugs; adequate directions for use.**

"Adequate directions for use" means directions under which the layman can use a drug safely and for the purposes for which it is intended. (Section 201.128 defines "intended use.") Directions for use may be inadequate because, among other reasons, of omission, in whole or in part, or incorrect specification of:

(a) Statements of all conditions, purposes, or uses for which such drug is intended, including conditions, purposes, or uses for which it is prescribed, recommended, or suggested in its oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drug is commonly used; except that such statements shall not refer to conditions, uses, or purposes for which the drug can be safely used only under the supervision of a practitioner licensed by law and for which it is advertised solely to such practitioner.

(b) Quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions.

(c) Frequency of administration or application.

(d) Duration of administration or application.

(e) Time of administration or application (in relation to time of meals, time of onset of symptoms, or other time factors).

commerce and section 334(a)(1)[6] permits the seizure and condemnation of a misbranded drug which either has been introduced into interstate commerce or is held

(f) Route or method of administration or application.

(g) Preparation for use, i. e., shaking, dilution, adjustment of temperature, or, other manipulation or process.

21 C.F.R. § 201.5 (1980).

**6. § 334. Seizure**

**(a) Grounds and jurisdiction**

(1) Any article of food, drug, or cosmetic that is adulterated or misbranded when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce, or which may not, under the provisions of section 344 or 355 of this title, be introduced into interstate commerce, shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States or United States court of a Territory within the jurisdiction of which the article is found: *Provided, however,* That no libel for condemnation shall be instituted under this chapter, for any alleged misbranding if there is pending in any court a libel for condemnation proceeding under this chapter based upon the same alleged misbranding, and not more than one such proceeding shall be instituted if no such proceeding is so pending, except that such limitations shall not apply (A) when such misbranding has been the basis of a prior judgment in favor of the United States, in a criminal, injunction, or libel for condemnation proceeding under this chapter, or (B) when the Secretary has probable cause to believe from facts found, without hearing, by him or any officer or employee of the Department that the misbranded article is dangerous to health, or that the labeling of the misbranded article is fraudulent, or would be in a material respect misleading to the injury or damage of the purchaser or consumer. In any case where the number of libel for condemnation proceedings is limited as above provided the proceeding pending or instituted shall, on application of the claimant, seasonably made, be removed for trial to any district agreed upon by stipulation between the parties, or, in case of failure to so stipulate within a reasonable time, the claimant may apply to the court of the district in which the seizure has been made, and such court (after giving the United States attorney for such district reasonable notice and opportunity to be heard) shall by order, unless good cause to the contrary is shown, specify a district of reasonable proximity to the claimant's principal place of business, to which the case shall be removed for trial.

for sale after it or its component parts have been shipped in interstate commerce.

The second term is a "prescription drug," defined in 21 U.S.C.A. § 353(b).[7] A pre-

21 U.S.C.A. § 334(a)(1).

7. **(b) Prescription by physician; exemption from labeling and prescription requirements; misbranded drugs; compliance with narcotic and marihuana laws**

(1) A drug intended for use by man which—

(A) is a habit-forming drug to which section 352(d) of this title applies; or

(B) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or

(C) is limited by an approved application under section 355 of this title to use under the professional supervision of a practitioner licensed by law to administer such drug; shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or (iii) by refilling any such written or oral prescription if such refilling is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist. The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale.

(2) Any drug dispensed by filling or refilling a written or oral prescription of a practitioner licensed by law to administer such drug shall be exempt from the requirements of section 352 of this title, except subsections (a), (i)(2) and (3), (k), and (*l*) of said section, and the packaging requirements of subsections (g), (h), and (p) of said section, if the drug bears a label containing the name and address of the dispenser, the serial number and date of the prescription or of its filling, the name of the prescriber, and, if stated in the prescription, the name of the patient, and the directions for use and cautionary statements, if any, contained in such prescription. This exemption shall not apply to any drug dispensed in the course of the conduct of a business of dispensing drugs pursuant to diagnosis by mail, or to a drug dispensed in violation of paragraph (1) of this subsection.

(3) The Secretary may by regulation remove drugs subject to sections 352(d) and 355 of this title from the requirements of paragraph (1) of this subsection when such requirements are not necessary for the protection of the public health.

scription drug by its nature is not safe for use except under the supervision of a licensed practitioner. The same section prohibits dispensing such drugs without a prescription. A prescription drug may be deemed misbranded if it is dispensed without a prescription or if at any time prior to being dispensed it does not bear the statement "Caution: Federal law prohibits dispensing without prescription."[8] Prior to being dispensed a prescription drug must meet the misbranding requirements of section 352, including section 352(f). After a prescription drug has been lawfully prescribed, it is exempt from most of the requirements of section 352 but must meet the labeling requirements of section 353(b)(2).

A "new drug" is one which is not generally recognized among qualified scientific experts as safe and effective for the uses described in its labeling.[9] The focus for determination of "new drug" status is primarily on whether the drug is so recognized, not upon the drug's age. It is unlawful to introduce a new drug into interstate

commerce without an approved New Drug Application[10] and any drug in violation of section 355 may be seized and condemned under section 334[11] after it has been introduced into interstate commerce.

### Facts

In early 1976, the Food and Drug Administration notified Rucker Pharmacal Co. that three prescription drugs used for the treatment or prevention of pain and various types of infections in humans—SUL–V, AZO–MED and RU–LOR–N—had been determined to be new drugs for which no New Drug Application (NDA) had been approved. Rucker refused to cease marketing the drugs, which it had been marketing for several years, disagreeing with FDA's assessment that the three were new drugs.

On September 20, 1976, the Government instituted the present seizure and condemnation action under section 334(a) against the drugs, alleging the drugs were misbranded because the labeling did not meet the adequate directions for use requirement

(4) A drug which is subject to paragraph (1) of this subsection shall be deemed to be misbranded if at any time prior to dispensing its label fails to bear the statement "Caution: Federal law prohibits dispensing without prescription". A drug to which paragraph (1) of this subsection does not apply shall be deemed to be misbranded if at any time prior to dispensing its label bears the caution statement quoted in the preceding sentence.

(5) Nothing in this subsection shall be construed to relieve any person from any requirement prescribed by or under authority of law with respect to drugs now included or which may hereafter be included within the classifications stated in sections 4721, 6001, and 6151 of title 26, or to marihuana as defined in section 4761 of title 26.

21 U.S.C.A. § 353. *See generally* Boland, *Federal Regulation of Prescription Drug Advertising and Labeling,* 12 B.C.Indus. & Com.L.R. 203, 228–33 (1979); Dunn, *The New Prescription Drug Law,* 6 Food Drug Cosmetic L.J. 951 (1951); Shapiro, *Limiting Physician Freedom to Prescribe A Drug for any Purpose: The Need for FDA Regulation,* 73 Nw.L.R. 801 (1978); Note, *The Drug Amendments of 1962,* 38 N.Y.U.L.R. 1082 (1963).

**8.** 21 U.S.C.A. § 353(b)(4).

**9.** (p) The term "new drug" means—

(1) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a "new drug" if at any time prior to June 25, 1938, it was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time its labeling contained the same representations concerning the conditions of its use; or

(2) Any drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions.

21 U.S.C.A. § 321(p).

**10.** *See* 21 U.S.C.A. § 355; 21 C.F.R. §§ 5.1, 314.1–.14, 314.100–.121, 314.200–.201 (1980).

**11.** *See* note 6 *supra.*

in section 352(f), and did not meet any of the regulatory exemptions. The Government's counsel explained at oral argument that FDA sought to seize the drugs as misbranded rather than as new drugs because, while the drugs' components had been shipped in interstate commerce and the drugs were held by Rucker for sale, a sufficient prerequisite for a misbranding seizure, the finished articles of drug had not yet been introduced into interstate commerce, arguably a prerequisite to a new drug seizure.[12] We do not decide whether the Government could have seized the drugs as new drugs at that time, because that is not an issue on appeal.

After the drugs were seized, Rucker filed a claim for the drugs and an answer to the Government's complaint. In its answer, Rucker claimed the drugs bore adequate directions for use and claimed that, in any event, the drugs' labeling met the requirements of one regulatory exemption from the adequate directions for use requirement.[13]

The parties filed cross-motions for summary judgment. The Government argued, consistent with its regulations, that the phrase "adequate directions for use" means directions adequate to enable a layman to use a drug safely and effectively for its labeled uses.[14] Since by definition prescription drugs can only be used safely upon the advice of a physician, it is impossible for a prescription drug's labeling to contain adequate directions for use,[15] according to FDA. Therefore, all prescription drugs which do not meet one of the regulatory exemptions are necessarily misbranded. The applicable exemptions, continues the

Government's argument, require that any drug subject to a new drug application must bear the labeling submitted for an NDA.[16] Since these were deemed to be new drugs for which an NDA is required, and since there was no approved NDA, the drugs did not meet any regulatory exemption and were thus due to be condemned.

Rucker disputed the Government's interpretation of the statute as requiring adequate directions for a layman, and contended the drugs did meet the statutory requirements because, first, they bore the required warning that under federal law they cannot be dispensed without prescription[17] and second, the labeling contained adequate directions for a physician to prescribe the drugs safely. Rucker contended that is all the statute requires and therefore it was unnecessary to meet one of the regulatory exemptions. In any event, Rucker contended the three met the requirements of the exemptions found in 21 C.F.R. § 201.100 (1980), which applies to prescription drugs, and specifically contended the drugs were not subject to a new drug application.

The district court granted Rucker's motion for summary judgment on the ground that the cautionary notice, plus adequate directions to enable a physician to prescribe the drugs properly, were all the statute requires. The court determined that the agency regulation which defines adequate directions for use as directions sufficient for self-medication by a layman was, when applied to prescription drugs, unreasonable and inconsistent with the statute. The Government's action was dismissed.

12. *See United States v. Articles of Drug*, 585 F.2d 575, 585 (3d Cir. 1978); *United States v. 40 Cases, More or Less*, 289 F.2d 343, 345–46 (2d Cir.), *cert. denied*, 368 U.S. 831, 82 S.Ct. 54, 7 L.Ed.2d 34 (1961); *United States v. Phelps Dodge Mercantile Co.*, 157 F.2d 453, 454–56 (9th Cir. 1946), *cert. denied*, 330 U.S. 818, 67 S.Ct. 675, 91 L.Ed. 1270 (1947).

13. *See* 21 C.F.R. § 201.100 (1980).

14. 21 C.F.R. § 201.5 (1980).

15. *See United States v. Articles of Device [Acuflex; Pro-Med]*, 426 F.Supp. 366, 369 (W.D.Pa.

1977); *United States v. Article of Drug*, [1975 Transfer Binder] Food Drug Cos.L.Rep. (CCH) ʽ 38,009 (S.D.Fla.1974); *United States v. Article of Drug* . . . *"Mykocert"*, 345 F.Supp. 571, 574 (N.D.Ill.1972); *United States v. Abbott Laboratories*, No. 66CR–584 (N.D.Ill. April 12, 1968).

16. *See* 21 C.F.R. §§ 201.100(c)(2), 201.115 (1980).

17. 21 U.S.C.A. § 353(b)(4).

*The Regulations*

■ The principal question on appeal is whether the district court was correct in rejecting the agency's interpretation of this statute. The test is whether the agency's interpretation is unreasonable or inconsistent with the statutory purpose, for if it is not, the district court was not free to substitute its judgment for that of the administrative agency.[18] Long-standing administrative interpretations of the statute under which the agency operates come into court cloaked with a presumption of correctness which may be thrown aside only when the agency has exceeded the authority granted in the statute.[19] This is especially true in the case of remedial legislation like the Food, Drug, and Cosmetic Act.[20]

■ All agree that the pivotal issue is whether the drugs bore "adequate directions for use." *See* 21 U.S.C.A. § 352(f)(1). The term adequate directions for use is not defined further in the statute. Does it mean only adequate directions for lay use or does it include adequate directions for a physician's use? The agency has apparently interpreted the statute to mean only adequate directions for lay use. In 1952 FDA promulgated regulations defining the phrase as follows:

"Adequate directions for use" means directions under which the layman can use a drug safely and for the purposes for which it is intended.

21 C.F.R. § 201.5 (1980). The Government states that not only has this been its interpretation for the twenty-eight years since the regulation was published, but that the regulation merely codified agency practice since 1938. Nothing which has come to the attention of the Court negates that position.[21]

Although not clearly definitive, the legislative history of the misbranding provision does reveal Congress' purpose that the legislation

require the labeling of drugs and devices with information essential to the consumer. The bill is not intended to restrict in any way the availability of drugs for self-medication. On the contrary, it is intended to make self-medication safer and more effective. For this purpose provisions are included in this section . . . requiring that labels bear adequate directions for use. . . .[22]

With this suggestion that the congressional goal was to create drug labeling requirements that would ensure that consum-

---

**18.** *United States v. Rutherford*, 442 U.S. 544, 553–54, 99 S.Ct. 2470, 2475–76, 61 L.Ed.2d 68 (1979); *Bayside Enterprises, Inc. v. NLRB*, 429 U.S. 298, 303–04, 97 S.Ct. 576, 580–81, 50 L.Ed.2d 494 (1977); *Coca-Cola Co. v. Atchison, T. & S. F. Ry.*, 608 F.2d 213, 222 (5th Cir. 1979).

**19.** *Board of Governors v. First Lincolnwood Corp.*, 439 U.S. 234, 251, 99 S.Ct. 505, 514, 58 L.Ed.2d 484 (1978); *Morton v. Ruiz*, 415 U.S. 199, 236–37, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974).

**20.** *See United States v. Article of Drug . . . Bacto-Unidisk*, 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969).

**21.** *See generally United States v. Guardian Chem. Corp.*, 410 F.2d 157, 161 n.3 (2d Cir. 1969); *United States v. Article of Drug Designated B–Complex Cholinos Capsules*, 362 F.2d 923, 927 (3d Cir. 1966); *United States v. Hohensee*, 243 F.2d 367, 369 n.1 (3d Cir.), *cert. denied*, 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136 (1957); *Alberty Food Prods. v. United States*, 194 F.2d 463, 464 (9th Cir. 1952); *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62,

74 (9th Cir. 1951); *United States v. Sene X Eleemosynary Corp.*, 479 F.Supp. 970, 980 (S.D. Fla.1979); *United States v. Articles of Device [Acuflex; Pro-Med]*, 426 F.Supp. 366, 369 (W.D.Pa.1977); *United States v. Device Labeled "Cameron Spitler * * *"*, 261 F.Supp. 243, 245–46 (D.Neb.1966) (quoting *United States v. El-O-Pathic Pharmacy*, 192 F.2d at 75); *United States v. Article Consisting of 2 Devices, More or Less*, 255 F.Supp. 374, 376 (W.D.Ark.1966), *rev'd on other grounds sub nom. United States v. Shock*, 379 F.2d 29 (8th Cir. 1967); *United States v. "Vitasafe Formula M"*, 226 F.Supp. 266, 278 (D.N.J.1964), *modified on other grounds sub nom. United States v. Vitasafe Corp.*, 345 F.2d 864 (3d Cir.), *cert. denied*, 382 U.S. 918, 86 S.Ct. 290, 15 L.Ed.2d 232 (1965); *United States v. 38 Dozen Bottles, More or Less*, 114 F.Supp. 461, 463 n.1 (D.Minn.1953).

**22.** H.R.Rep.No.2139, 75th Cong., 3d Sess. 8 (1938), *reprinted in* VI *Legislative History of the Federal Food, Drug, and Cosmetic Act and its Amendments* 299, 307 (1979).

ers be provided with all the information they need to self-administer drugs safely, FDA's interpretation of the statute and its regulations clearly furthers that purpose by requiring sufficient directions for a lay person.

The available materials indicate that FDA has since the inception of the Act defined this term in a fairly consistent manner.[23] "This administrative interpretation over many years is entitled to great weight."[24]

Thus, giving proper weight to a long-standing agency interpretation and finding that interpretation consistent with both the apparent congressional purpose and a reasonable interpretation of the statute, we hold that a drug's labeling must contain adequate directions for a consumer to engage in self-medication. Since a prescription drug by definition can be used only under a physician's supervision, and is unsuitable for self-medication, such a drug must qualify for a regulatory exemption created by FDA, pursuant to the authority of section 352(f).[25]

Although not required by precedent in this Circuit, several other courts have so held.[26] We have been unable to uncover contrary authority.[27]

Rucker relies heavily on *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62 (9th Cir. 1951), which by dictum seems to indicate a contrary result. There the court considered the labeling of a drug found to be "inherently dangerous and not safe and efficacious for use except under the supervision of a physician, . . ." 192 F.2d at 74. An adequate direction for use of such a drug, the court held, must include the cau-

tionary legend required by regulations exempting the drug from the statutory adequate directions for use standard. 192 F.2d at 74–75. The court stated that the cautionary legend would be required even without the exempting regulations because for prescription drugs, "adequate directions for unsupervised lay use cannot be written, . . . ." 192 F.2d at 74. The court was not presented with the agency's argument here, however, and its comment is of little persuasive value.

Rucker contends that application of the lay use interpretation, while perhaps reasonable in other contexts, leads in the case of prescription drugs to a quixotic standard that can never be met. The simple response is that prescription drugs are not expected to comply with that standard. Congress itself, in the very subsection containing the requirement, provided for exemptions on terms to be established by FDA. By providing for such exemptions, Congress apparently anticipated that certain classes of drugs might be unable to meet an adequate directions for lay use requirement. Although FDA's interpretation does create an impossible standard, that interpretation is made reasonable by the exemptions authorized in the statute.

Rucker further contends Congress could not have intended that all prescription drugs would be subject to regulations only vaguely authorized by the statute. We disagree. When Congress has authorized the exemptions and delegated to FDA the duty of defining their reach, it is entirely reasonable to ascribe to Congress the intention to let the agency develop their scope.

---

**23.** *See* 17 Fed.Reg. 6818 (July 25, 1952) (codified in 21 C.F.R. § 1.106(a) (1952 Cum.Supp.)) (current version at 21 C.F.R. § 201.5 (1980)); 3 Fed.Reg. 3167–68 (Dec. 28, 1938).

**24.** *Commissioner v. First Security Bank*, 405 U.S. 394, 403 n.16, 92 S.Ct. 1085, 1091 n.16, 31 L.Ed.2d 460 (1972).

**25.** *See* 21 C.F.R. §§ 201.100, 201.115 (1980).

**26.** *United States v. Articles of Device [Acuflex; Pro-Med]*, 426 F.Supp. 366, 369 (W.D.Pa.1977); *United States v. Article of Drug*, [1975 Transfer

Binder] Food Drug Cos.L.Rep. (CCH) ' 38,009 (S.D.Fla.1974); *United States v. Abbott Laboratories*, No. 66 CR–584 (N.D.Ill. April 12, 1968).

**27.** *Cf. United States v. Articles of Drug*, 585 F.2d at 584–85 n.17 (whether prescription drugs may ever bear adequate directions for use is described as a "conundrum" that court declines to decide); *United States v. Article of Drug . . . "Mykocert"*, 345 F.2d at 573 (dictum).

Rucker points to the language authorizing regulatory exemptions and suggests that mandatory exemptions are inappropriate in the case of prescription drugs. The statutory language reads as follows:

> *Provided*, That where any requirement of clause (1) of this subsection [the adequate directions for use requirement] . . . is not necessary for the protection of the public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement.

This language, the argument goes, suggests that exemptions were anticipated only in the case of drugs or devices posing no threat to the public health. Surely exemptions were not intended for prescription drugs, which are among the most dangerous and pose the greatest potential threat to the public health, if misused.

Although this confuses the potential dangers of the drugs with the requirement of proper branding for protection of the public health, such an interpretation might be reasonable and plausible given the language in the statute. That alone, however, does not show that the agency's interpretation is unreasonable and implausible. Since prescription drugs are only subject to the adequate directions requirement prior to being lawfully dispensed,[28] when they are protected by strict criminal and civil penalties, the agency's view is that they pose no threat to the public health prior to dispensing so long as they comply with the terms of the exemption in the regulation. This view is certainly a reasonable interpretation of the statute.

The Government also points out that the regulations have provided for an exemption of prescription drugs since shortly after the Act was passed in 1938.[29] Although the Act and, in particular, the prescription drug provisions, have been amended since then,[30]

Congress did not see fit to eliminate or modify a regulatory scheme which provided for a prescription drug exemption from the requirements of section 352(f)(1). "[A]n agency's long-standing construction of its statutory mandate is entitled to great respect, 'especially when Congress has refused to alter the administrative construction.' "[31] The agency's interpretation that prescription drug exemptions are warranted under the section 352(f) proviso, being reasonable and enjoying implicit congressional approval, is entitled to judicial deference and is due to be upheld in this case.

Rucker notes that under section 353(b)(2) the adequate directions requirement applies to prescription drugs only prior to the time they are prescribed and dispensed by a licensed physician. Since a layman may not legitimately obtain prescription drugs during the period in which the adequate directions requirements are applicable, and since the only "user" during that time will be a physician, Rucker argues the "adequate for use by a layman" standard is unreasonable and unjustified by the statute. The requirement that a prescription drug's labeling bear adequate directions for use should be met, Rucker argues, if the labeling includes (1) the cautionary statement required by section 353(b)(4), "Caution: Federal law prohibits dispensing without prescription," and (2) adequate directions for the physician to prescribe the drug safely and effectively.

Rucker's argument might have merit if the adequate directions for use issue posed by this case were a simple matter of statutory construction. Such a scheme would appear to be reasonable and not inconsistent with the statute's thrust. But, as noted above, implementation of this complex statutory scheme is a job entrusted in the first

28. *See* 21 U.S.C.A. § 353(b)(2).

29. *See* note 23 *supra*.

30. *See* Drug Amendments of 1962, Pub.L.No. 87–781, 76 Stat. 780 (1962); Federal Food, Drug, and Cosmetic Act Amendments (Durham-Humphrey amendments), Pub.L.No.82–215, 65 Stat. 648 (1951).

31. *Board of Governors v. First Lincolnwood Corp.*, 439 U.S. at 248, 99 S.Ct. at 513 (quoting *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969)).

instance to an expert agency. Of course, when there is more than one reasonable interpretation, the court is bound to follow that of the agency.[32]

By defining more explicitly the statute's terms and creating applicable regulations, FDA ensures that a physician is able to prescribe drugs safely and efficaciously. The agency's overall scheme reasonably enhances the statutory purpose without contravening any of its provisions. The agency's approach is reasonable, and is not due to be invalidated.

The district court held in this case that the three drugs bore labeling containing adequate directions for use. Since these drugs are prescription drugs, and therefore could not by definition bear "adequate directions for use," we reverse this holding of the district court.

Because it held that the three drugs complied with the requirement of section 352(f)(1), the district court did not properly address the issue of whether these drugs meet the requirement of any regulatory exemption. On remand the district court must decide that issue. If the drugs do not qualify under one of the exemptions, they will be deemed misbranded and will be subject to condemnation.

At least two exemptions seem to be available: 21 C.F.R. §§ 201.100 and 201.115 (1980).[33] Regulation 201.100 provides that, among other things, if the drug is subject to section 355 of the Act—the "new drug" provisions—the labeling must contain the information "authorized by the approved new drug application . . . ." 21 C.F.R. § 201.100(c)(2) (1980). Since it is undisputed that no new drug application was approved for the three drugs in this case, a central issue for decision in the district court on remand will be whether the three drugs are subject to the Act's new drug section. In other words, the core question is whether these three drugs are generally recognized among qualified experts as safe and effective for use under the conditions prescribed, recommended, or suggested in the drugs' labeling. See 21 U.S.C.A. § 321(p). Regulation 201.115 likewise ties the exemption to approval in a new drug application. 21 C.F.R. § 201.115(a) (1980).

Rucker contended in the district court that section 201.100(c)(2) did not apply because no NDA had been filed. The applicability of section 201.100(c)(2) turns in this case, however, not on whether an NDA has been filed, but on whether these are "new drugs" and are "subject" to section 355. Therefore, the issue is not whether an application had been filed, but whether one should have been filed.

The Government argues the drugs have previously been determined by FDA to be new drugs, based upon the conclusion of various drug efficacy studies,[34] and therefore the exemptions are unavailable, there being no approved new drug application covering the three Rucker drugs. In this enforcement proceeding, however, Rucker never confronted directly the new drug question, which underlies this entire dispute, nor did the district court decide whether the Government's determination is in fact correct. Accordingly, on remand, the district court, in considering the availability of either of the two exempting provisions, will necessarily decide whether RU–LOR–N, SUL–V and AZO–MED are new drugs.[35]

REVERSED AND REMANDED.

**32.** *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946); *Coca-Cola Co. v. Atchison, T. & S. F. Ry.,* 608 F.2d at 222; *U. S. Pipe & Foundry Co. v. Webb,* 595 F.2d 264, 272 n.8 (5th Cir. 1979).

**33.** *See* note 4 *supra.*

**34.** *See* 21 C.F.R. § 310.6 (1980); 38 Fed.Reg. 3210 (Feb. 2, 1973); 37 Fed.Reg. 6339–40 (March 28, 1972); 35 Fed.Reg. 18215–17 (Nov. 28, 1970); 34 Fed.Reg. 13948–49 (Aug. 30, 1969); 34 Fed.Reg. 9464–66 (June 17, 1969).

**35.** *See generally Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973); *United States v. Articles of Food & Drug,* 518 F.2d 743, 745–47 (5th Cir. 1975); *United States v. 1,048,000 Capsules,* 347 F.Supp. 768, 772–76 (S.D.Tex.1972), *aff'd,* 494 F.2d 1158 (5th Cir. 1974).